IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ROBERTS<br><br>and<br><br>JAMES EDWARDS,<br><br>        Plaintiffs,<br><br>v.<br><br>PLANNED BUILDING SERVICES,<br><br>        Defendant. | CIVIL ACTION<br><br>No. 08-0968 |

<u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                                                  **FEBRUARY 13, 2009**

Presently before the Court is the Motion for Summary Judgment filed by Defendant Planned Building Services ("Planned Security"). For the reasons set forth below, the Motion for Summary Judgment is granted.

**I.      FACTS**

Plaintiff William Roberts ("Roberts") was employed by Planned Security as a site supervisor at a building of condominiums located at 2601 Pennsylvania Avenue in Philadelphia, Pennsylvania.[1] Prior to 2005, the building operated as a rental facility. In 2005, the building began its conversion from apartments to condominiums. During the transition of the building to condominiums, Wentworth Property Management ("Wentworth"), the company managing 2601 as the condominium complex, hired Planned Security to provide front-desk concierge and

---

[1] James Edwards was dismissed from this case on July 29, 2008.

security services for the building. Planned Security chose to keep many of the employees who had previously worked at 2601 when it operated as an apartment community. Roberts was one of these employees. Though the management of 2601 had changed hands many times, Roberts had worked at the building for approximately seventeen years. Planned Security hired Roberts as a site supervisor on May 27, 2005. Roberts was supervised by Dino Iuliano ("Iuliano"), Vice President of Operations for Planned Security, and Robert Vigliotti ("Vigliotti"), Planned Security's Regional Manager. In addition, Stacia Scaduto ("Scaduto"), Wentworth's Community Manager, remained in contact with Iuliano and worked on behalf of Wentworth to ensure that Planned Security's operation of concierge and security service remained satisfactory.

Following the building's transition to condominiums, Wentworth became concerned with Roberts's performance as site supervisor. Both Iuliano and Scaduto testified that they had received numerous complaints from residents of the building concerning Roberts's performance. Specifically, Scaduto testified that she had received complaints that front-desk employees were not greeting residents or their guests, the appearance of the front desk was disorderly and "disheveled," employees were not handling packages properly, employees were not wearing uniforms, employees were playing inappropriate music at the front desk, pets were being brought through the lobby, and employees were blocking security monitors with newspapers. (Scaduto Dep. 31:16-35:18.) Scaduto testified that she relayed these complaints to Iuliano. Iuliano, himself, testified that he had received complaints about Roberts's tardiness and his failure to wear a uniform, and that both Scaduto and Vigliotti felt that Roberts was not adequately performing his duties as supervisor. (Iuliano Dep. 104:13-110:12.) Furthermore, Scaduto testified that she had several conversations with Roberts regarding these complaints wherein she

advised him that it was his responsibility, as supervisor, to address these issues. (Scaduto Dep. 77:7-12.) Nonetheless, Roberts failed to "step up to the plate" to address these issues. (Id. at 77:10.) Iuliano testified that, as a result of these complaints, he decided to terminate Roberts's employment on March 27, 2006.

In contrast, Roberts asserts that he was fired, not for poor work performance, but rather on the basis of his race. In support of this contention, Roberts points to one specific conversation that he alleges took place between himself and Iuliano, in the presence of another employee, wherein Iuliano made, what Roberts interpreted to be, a racist remark. (Roberts Dep. 40:3-23.) Roberts asserts that, sometime between fall 2005 and winter 2006, he spoke with Iuliano concerning the possibility of obtaining a pay increase and an increased budget to hire more employees. According to Roberts, Iuliano replied that he would not increase the budget, but that Roberts could hire more "animals" at a lower pay rate and keep the additional savings for himself. Roberts asserts that because the majority of the staff was African American, Iuliano's reference to "animals" was directed at African Americans, both those currently employed at Planned Security and those who may be hired in the future. (Id.)

Furthermore, Roberts asserts that he performed the functions of his job adequately at all times. In response to Iuliano's assertion that he had received complaints concerning Roberts's tardiness, Roberts contends that he had spoken to Iuliano about the fact that he needed to take his child to daycare in the mornings and would, therefore, be unable to report for work at the scheduled time. (Roberts Dep. 77:18-78:11.) Furthermore, with respect to the additional complaints to which Ms. Scaduto testified, Roberts asserts that Scaduto never spoke to him regarding these issues. (Roberts Dep. 74: 18-22.) Roberts additionally argues, in his Response

to the Motion for Summary Judgment, that Scaduto never issued him either a verbal or written warning, and she could not identify any specific occasion when she spoke to Roberts about his failure to wear a uniform.  Furthermore, Roberts contends that none of these performance issues were brought up to him at the time of his termination.

Roberts filed a claim with the Equal Employment Opportunity Commission ("EEOC").  On November 16, 2007, the EEOC issued a Dismissal and Notice of Rights in Roberts's case.  Roberts filed a Complaint in this Court on February 26, 2008.  The allegations set forth in Roberts's Complaint allege claims against Planned Security for unlawful discrimination pursuant to: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e); (2) 42 U.S.C. § 1981; and (3) the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 ("PHRA").  Additionally, Roberts seeks relief for intentional infliction of emotional distress.  Planned Security filed the instant Motion for Summary Judgment on November 11, 2008.

## II.     STANDARD OF REVIEW

"Summary judgment is appropriate when, after considering the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact remains in dispute and 'the moving party is entitled to judgment as a matter of law.'"  Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact.  Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362 (3d Cir. 1992).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.

Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998), aff'd, 172 F.3d 40 (3d Cir. 1998).

Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates that there is a genuine issue of fact requiring a trial. See Big Apple BMW, 974 F.2d at 1362-63. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.   DISCUSSION

Planned Security asserts that it is entitled to summary judgment because: (1) Roberts's Title VII claims were untimely filed and are barred by the statute of limitations; (2) Roberts has failed to meet his burden of establishing that he was terminated on the basis of race; (3) Roberts's tort claims are pre-empted by the Pennsylvania Workers' Compensation Act.

#### A.   Untimeliness of the Complaint

Pursuant to Title VII, plaintiffs have ninety days from the receipt of the right-to-sue letter issued by the EEOC within which to file a complaint in federal court. 42 U.S.C. § 2000e-5(f)(1). Courts have treated this ninety day provision as a statute of limitations. Figueroa v. Buccaneer

Hotel, 188 F.3d 172, 176 (3d Cir. 1999). The provision has been strictly enforced by the courts. In fact, the Third Circuit has held that "a claim filed even one day beyond its ninety day window is untimely and may be dismissed absent an equitable reason for disregarding the statutory requirement." Id. (citing Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986)). The clock begins to run when either the plaintiff or counsel for plaintiff receives the right-to-sue letter. Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 n.1 (3d Cir. 1999). In the absence of evidence to the contrary, it is presumed that the right-to-sue letter is received within three days after mailing. Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).

Here, it is undisputed that the EEOC issued Roberts a right-to-sue letter on November 16, 2007. Roberts filed his Complaint in this matter on February 26, 2008. Nevertheless, Roberts argues that the Complaint was timely filed because a date-stamped copy of the right-to-sue letter received by plaintiff's counsel reveals that the letter was not received until November 26, 2007. However, even accepting Roberts's assertions as true and assuming that the right-to-sue letter was not received until November 26, 2007, the Complaint would still be untimely, as it would have been filed 92 days after receipt of the right-to-sue letter. However, for the reasons set forth below, this Court would grant summary judgment, even assuming that the Complaint had been timely filed.

### B. Title VII Disparate Treatment Claim

Roberts's Complaint asserts a disparate treatment claim against Planned Security pursuant to Title VII, Section 1981, and the PHRA.[2] Because the elements of a disparate treatment claim are identical under Title VII, Section 1981, and the PHRA, all three claims will

---

[2] While there was some initial confusion as to the theory under which Roberts's claims were based, Roberts has made clear that he intends to pursue a disparate treatment claim only. (Pl.'s Resp. 15.)

be analyzed together.  Matthews v. Herman, No. 07-1318, 2008 U.S. Dist. LEXIS 35726, at *45 (E.D. Pa. Apr. 30, 2008).

In the absence of direct evidence of discrimination, disparate treatment claims are analyzed under the burden-shifting framework pronounced by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The analysis under McDonnell Douglas is three-fold.  First, the plaintiff must establish a prima facie case of discrimination.  Id.  If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id.  Finally, once the employer has advanced a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons asserted by the employer were pretext for discrimination.  Id. at 804.  While the burden of production shifts between the plaintiff and the defendant, the burden of persuasion remains on the plaintiff at all times.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  It is not enough that a plaintiff show that an employer's decision was wrong or mistaken.  Id. at 765.  In order to establish a case of disparate treatment based on race, the plaintiff must establish that race was a determining factor in the adverse employment action.  Id. at 764.  "A plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination."  Wilson v. Blockbuster, Inc., 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008)(citing Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000)).

We must first consider whether Roberts has established a prima facie case of disparate treatment based on race.  In order to establish a prima facie case, Roberts must establish: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that his employment

was terminated; and (4) that his termination occurred under circumstances giving rise to an inference of discrimination based on race. Wilson, 571 F. Supp. 2d at 647. We find that Roberts has satisfied the first three elements of the prima facie case, in that he has established that he is a member of a protected class, that he was qualified for the position, and that he was terminated. Nonetheless, Roberts has failed to establish that his termination took place under circumstances giving rise to an inference of discrimination, and therefore, he has failed to establish the fourth prong of the analysis.

In support of his argument that he was terminated based on his race, Roberts has pointed to evidence of one conversation, wherein he asserts that Iuliano used the term "animals" in referencing African Americans. This conversation alone, without more, is insufficient to establish that Roberts's race was a deciding factor in his termination. See id. (stating plaintiff must establish some "causal nexus between his membership in a protected class and the adverse employment decision complained of"). While referring to any individual as an "animal" would certainly be demeaning, Roberts has not shown any additional evidence that race played a role in Planned Security's decision-making, or that this conversation was related to his ultimate termination. This, coupled with the fact that the majority of Planned Security's staff was made up of African Americans, and taking into account that James Edwards, a current employee of Planned Security, testified that the current supervisor is also African American, weighs against Roberts's assertion that he was fired because he is African American. Additionally, Roberts has failed to identify any other employee outside of his protected class who was not terminated after engaging in the same or similar behavior as that alleged here, or any non-African American employee who was treated more favorably, in general. See Matthews, 2008 U.S. Dist. LEXIS

35726, at * 27-28 (discussing need for a "comparator" in disparate treatment cases); Wilson, 571 F. Supp. 2d at 651.  Therefore, the circumstances surrounding Roberts's termination do not give rise to an inference that Roberts was terminated on the basis of his race.  As such, Roberts has failed to establish a prima facie case of disparate treatment.

However, even assuming that Roberts had established a prima facie case, Planned Security's Motion for Summary Judgment would still be granted.  Planned Security has met its burden of producing legitimate, nondiscriminatory reasons for terminating Roberts's employment, and therefore, the burden shifts back to Roberts to show pretext.  This he has failed to do.  Roberts has argued that he performed the functions of his job adequately at all times, and that he was never warned of the violations for which Planned Security asserts he was fired.  Furthermore, Roberts presented the deposition testimony of Albert Pasquarello, a long-time co-worker of his, who testified that Roberts was usually on time and that Pasquarello was comfortable working with him.  Nonetheless, this evidence does not establish a connection between Roberts's termination and the fact that he is African American.  At most, this evidence establishes that Scaduto and Iuliano were incorrect in their decision to terminate Roberts.  See Wilson, 571 F. Supp. 2d at 650.  However, as stated above, Roberts cannot establish a case of disparate treatment, based upon a showing that the employer was mistaken.  Id.  Similarly, Roberts's subjective belief that he was terminated based on race will also not establish his claim.  Id. at 647.  As such, summary judgment will be granted with respect to this claim.

    C.    **Intentional Infliction of Emotional Distress**

Roberts's Complaint additionally asserts a claim for intentional infliction of emotional distress.  Planned Security asks that this Court grant summary judgment with respect to this

claim, based on the theory that the claim is barred by the Pennsylvania Workers' Compensation Act. The Act reads:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 Pa. Stat. Ann. § 481(a). As is clear from the wording of the statute, the statute "provides the sole remedy for injuries incurred during the course of employment . . . [therefore] claims for intentional infliction of emotional distress are generally barred under Pennsylvania law." Wilson v. PPL Elec. Util. Corp., No. 02-4662, 2004 U.S. Dist. LEXIS 6686, at *19 (E.D. Pa. Mar. 31, 2004); see also Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997). Roberts does not address this claim in his Response to Defendant's Motion for Summary Judgment. However, it is well-settled that the Pennsylvania Workers' Compensation Act provides the sole avenue of recovery where the injuries alleged arise during the course of employment and fall within the employment relationship. Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 843-44 (E.D. Pa. 2000). As such, summary judgment will be granted with respect to this claim, as well.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ROBERTS<br><br>and<br><br>JAMES EDWARDS,<br><br>    Plaintiffs,<br><br>v.<br><br>PLANNED BUILDING SERVICES,<br><br>    Defendant. | CIVIL ACTION<br><br>No. 08-0968 |

## ORDER

**AND NOW**, this 13th day of February, 2009, in consideration of the Motion for Summary Judgment filed by Planned Building Services, (Doc. No. 11), and the response thereto, it is hereby **ORDERED** that the Motion for Summary Judgment is **GRANTED.**

                                              BY THE COURT:

                                              /s/ Robert F. Kelly
                                              ROBERT F. KELLY
                                              SENIOR JUDGE